UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Rachel E. Burns, Nicholas E. Magnuson, and Jacob Burns,

        Plaintiffs,

v.

The Boy Scouts of America, a congressionally chartered corporation, authorized to do business in Minnesota; and Central MN Council Boy Scouts of America, a Minnesota non-profit Corporation; and the County of Stearns, Minnesota, a political subdivision of the State of Minnesota,

        Defendants.

Civil No. 13-769 (DWF/SER)

**MEMORANDUM OPINION AND ORDER**

_____

Michael A. Bryant, Esq., Bradshaw & Bryant PLLC, counsel for Plaintiffs.

John F. Angell, Esq., Louis A. Behrendt, Esq., Garth J. Unke, Esq., and Stacey L. Sever, Esq., Stich Angell Kreidler Dodge & Unke, PA, counsel for Defendants The Boy Scouts of America and Central MN Council Boy Scouts of America.

Allison A.W. Lindevig, Esq., and Jessica E. Schwie, Esq., Jardine Logan & O'Brien PLLP, counsel for County of Stearns, Minnesota.

_____

**INTRODUCTION**

      This matter is before the Court on a Motion for Summary Judgment brought by the County of Stearns, Minnesota ("Stearns County") (Doc. No. 59), and a Motion for Summary Judgment brought by Defendant The Boy Scouts of America ("BSA") and the

Central Minnesota Council Boy Scouts of America (the "Council") (Doc. No. 61). For the reasons set forth below, the Court grants both motions.

## BACKGROUND

Since 1979, the Stearns County Sheriff's Department has facilitated an Explorer Post program, which is sponsored by the Council. (Doc. No. 69, Bechtold Aff. ¶¶ 2-3; Doc. No. 71, Lindevig Aff. ¶ 2, Ex. E ("Reuter Dep.") at 14-15.) The Explorer Post Program accepted male and female adolescents aged fifteen to twenty-one years old. (Bechtold Aff. ¶ 4.) The program offered law enforcement experience, including training scenarios, skills competitions, and observation activities, such as ride-alongs. (Bechtold Aff. ¶ 5; Lindevig Aff. ¶ 2, Ex. A ("R.B. Dep.") at 131-32, 155-56; Lindevig Aff. ¶ 2, Ex. B ("N.M. Dep.") at 93-44, 98-99.)

The Explorer Post was directed and overseen by Explorer Advisors from the Stearns County Sheriff's Department. (Bechtold Aff. ¶ 7.) Chief Deputy Bruce Bechtold ("Bechtold") administered the Program, which was run by approximately six to eight Explorer Advisors. (*Id*.) Philippe Jerome Meemken ("Meemken") was a Senior Advisor. (Lindevig Aff. ¶ 2, Ex. L ("Meemken Dep.") at 69.) The Explorer Post had an officer corps and an internal chain of command. (R.B. Dep. at 133-34, 148-50, 165-69, 193; N.M. Dep. at 51, 90, 105, 119-20, 146.) Explorers were to report issues or problems to superior officers within the Post. (*Id*.)

Plaintiffs Rachel E. Burns ("R.B."), Nicolas E. Magnuson ("N.M."), and Jacob Burns ("J.B.") were all Explorers. R.B. became an Explorer in the fall of 2006, was

promoted to the rank of Explorer Lieutenant in 2008 and Explorer Captain in 2009. (R.B. Dep. at 117, 119-20.) N.M. became an Explorer in the fall of 2006, was promoted to Explorer Sergeant in 2008 and Explorer Lieutenant in 2009. (N.M. Dep. at 70, 75.) J.B. became an Explorer in the fall of 2009. (Lindevig Aff. ¶ 2, Ex. C ("J.B. Dep.") at 25.) All three remained active members until December 2009, when the program was disbanded. Every fall, Explorers received training regarding Stearns County policies, including those related to sexual harassment. (R.B. Dep. at 175-76; N.M. Dep. at 102.)

Meemken was employed by Stearns County in a variety of positions beginning in 1992, including as a correctional officer and a patrol officer. (Meemken Dep. at 6-7.) In 1993, Meemken became an Explorer Advisor and later, in 2004, became a Senior Advisor. (*Id*. at 9.) Prior to December 10, 2009, there were no reports of sexual abuse or any other inappropriate conduct or relationships between Explorers and Stearns County Sheriff's Department personnel. (Bechtold Aff. ¶ 8.)

R.B. and J.B. are brother and sister. (Meemken Dep. at 18; R.B. Dep. at 64.) Meemken is both R.B. and J.B.'s uncle (Meemken Dep. at 18).[1] R.B. and J.B. had frequent contact and interaction with Meemken as family members. (Meemken Dep. at 20-21.) During the relevant time period, R.B. and N.M. were romantically involved. (N.M. Dep. at 137, 288-89.) N.M. spent a considerable amount of time with R.B. and her family, including Meemken, at family gatherings and the like. (N.M. Dep. at 8, 288-89;

---

[1] Meemken is R.B. and J.B.'s mother's brother. (Meemken Dep. at 18-19.) Plaintiffs initially asserted claims against Meemken, but later dismissed those claims. (Doc. No. 1 ("Compl."); Doc. No. 52, Ex. 1 ("Am. Compl.").)

3

Meemken Dep. at 49.)  N.M. first met R.B. and Meemken in the Explorer Program.

(N.M. Dep. at 246, 252; Meemken Dep. at 19.)

On December 10, 2009, the Stearns County Sheriff's Department received a report of sexual abuse.  (Bechtold Aff. ¶ 12.)  N.M. contacted Stearns County Deputy Brent Curtis ("Curtis") to make the report that Meemken had sexually abused him and R.B. (N.M. Dep. at 29-30; Lindevig Aff. ¶ 2, Ex. F ("Curtis Dep.") at 29-33; R.B. Dep. at 75, 157-158.)  The matter was referred to Douglas County and ultimately to the BSA for investigation.  (Bechtold Aff. ¶ 12; Curtis Dep. at 32.)  Subsequent investigation led to further allegations of sexual abuse of J.B.

Plaintiffs allege that Meemken sexually abused each of the Plaintiffs during the approximate time period of July 2008 to December 2009.  Meemken denies the allegations.[2]  The allegations include the following incidents:  (1) on or about July 4, 2008, Meemken sexually abused N.M. while they were both intoxicated at a party hosted at the lake home of R.B.'s uncle, who is Meemken's brother (N.M. Dep. at 14, 263, 266, 272.); (2) in August 2008, Meemken sexually abused R.B. while R.B., N.M.,

---

[2]  Meemken was charged with 26 counts, including several for criminal sexual conduct.  *See State of Minnesota v. Phillip Jerome Meemken*,73-CR-10-2753; Doc. No. 26 ("Anderson Aff.") ¶ 3.).  On May 7, 2012, the district court accepted Meemken's *Alford* plea to one count of criminal sexual conduct in the 4th degree and two counts of furnishing liquor to a minor.  *See* Register of Actions for *State of Minnesota v. Phillip Jerome Meemken*,73-CR-10-2753, at http://pa.courts.state.mn.us.  All other counts were dismissed.  *Id*.

An *Alford* plea is a guilty plea entered as part of a plea agreement by a criminal defendant who denies committing the crime so long as he receives the benefit of the plea negotiation.  Unfortunately, from the Court's point of view, *Alford* pleas rarely serve the interests of justice, the public, or the victims because they allow a defendant, like Meemken, to take a plea bargain yet maintain their claim of innocence.

4

and Meemken were at R.B.'s mother's home (R.B. Dep. at 115-16, 249-51; N.M. Dep. at 273-75); (3) in the spring of 2009, Meemken sexually abused both R.B. and N.M. while they were at Meemken's home (R.B. Dep. at 252-255; N.M. Dep. at 17, 275-79); (4) on another occasion, Meemken sexually abused N.M. at R.B.'s mother's home (N.M. Dep. at 16); (5) in the summer of 2009, Meemken sexually abused J.B. in his mother's living room (J.B. Dep. at 143-44, 166-67); (6) in 2009, Meemken sexually abused J.B. during a family camping trip (J.B. Dep. at 147-51); and (7) in December 2009, Meemken sexually abused N.M. at N.M's apartment (N.M. Dep. at 18, 283-85). On December 10, 2009, N.M. contacted Stearns County Deputy Brent Curtis and reported the sexual abuse. (N.M. Dep. at 29.) Immediately following the December 10, 2009 allegations, actions were taken to disband the Explorer Post program. (Curtis Dep. at 34.) No Explorer Post meetings or activities were held after December 10, 2009, and the Post has been inactive since. (Bechtold Aff. ¶ 10.)

Plaintiffs assert one claim, comprised of two separate counts, based on alleged violations of Plaintiffs' constitutional right to be free from sexual abuse under 42 U.S.C. § 1983. (Doc. No. 52, Ex. 1, Am. Compl. ¶¶ 13-23.) The claim is expressly asserted against Stearns County. Both parties move for summary judgment on Plaintiffs' claim in its entirety.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Section 1983 Claims against Stearns County

In their Amended Complaint, Plaintiffs allege two claims against Stearns County for the "Violation of Federal Civil Rights" under 42 U.S.C. § 1983: policy or custom of ignoring reports (Count One) and failure to train (Count Two). (Am. Compl. ¶¶ 13-23.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiffs' claims are based on the alleged sexual abuse perpetrated by Meemken.

In order to support a § 1983 claim against Stearns County, there must be liability on the underlying constitutional claim against Meemken. *Robinette v. Jones*, 476 F.3d 585, 590 (8th Cir. 2007) ("Without a direct causal link between [the city's purported unconstitutional policy or custom] and some identified constitutional deprivation, [the City] cannot be liable . . . under § 1983."). To establish such liability, Plaintiffs must demonstrate that Meemken deprived Plaintiffs of a federal right while acting under the color of state law. 42 U.S.C. § 1983; *see also, Roe v. Humke*, 128 F.3d 1213, 1215-16 (8th Cir. 1997). In a case involving allegations of sexual abuse, a constitutional violation will lie where a person acting under the color of state law commits the abuse. *See, e.g., Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 455 (8th Cir. 2001) ("Intentional sexual harassment by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983.") (citation omitted).

To be acting under color of state law, a defendant must have "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Humke*, 128 F.3d at 1215 (citation omitted). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* (citation omitted). "It is clear that under 'color' of law means under 'pretense' of law. *Thus acts of officers in the ambit of their personal pursuits are plainly excluded.* Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." *Id.* at 1216 (citing *Screws v. United States*, 325 U.S. 91, 111 (1945) (plurality opinion)) (emphasis added).

The record demonstrates that Plaintiffs' allegations of sexual abuse all relate to incidents with Meemken that occurred during social and family outings and none of the incidents occurred while Meemken was on duty as a police officer or in the course of any Explorer Post program activities. Instead, the undisputed facts demonstrate that the alleged incidents all occurred at family gatherings or parties that took place at Meemken's home, other family members' homes, on a family camping trip, or at N.M.'s apartment. The record is clear that Meemken was at these locations for his own "personal pursuits" and not for any purpose legitimately or even purportedly related to his duties as a police officer or Explorer Program advisor. *See Humke*, 128 F.3d at 1216. Moreover, there are no facts demonstrating that Meemken was on-duty or wearing his police uniform or badge. *Cf. Haberthur v. City of Raymore, Mo.*, 119 F.3d 720, 724 (8th

Cir. 1997) (holding plaintiff sufficiently alleged officer was acting under color of law where officer followed plaintiff home in his police vehicle and threatened to give her a speeding ticket, and later, while he was on duty and in uniform, sexually assaulted plaintiff at her place of work).[3]

Plaintiffs argue that Meemken "groomed" his victims for sexual abuse and that the grooming activities occurred during the Explorer Post program, thus facilitating the abuse that occurred off-duty. Specifically, Plaintiffs argue:

> Here, Meemken would favor the children he was grooming for sex, advancing them when others were more qualified, isolating them, getting them intoxicated in a way that made them feel partially culpable, so that they would be less inclined to report his misdeeds.
>
> According to [] psychological examinations . . . this grooming activity made the sexual assaults possible . . . [and] should have been apparent to the two defendant institutions as they had a duty to be alert to it, given its foreseeability from interaction between adult authority figures and vulnerable children.

(Doc. No. 70 at 23-24.) While Plaintiffs' arguments are not backed with record citations or evidentiary support, the fact section of Plaintiffs' memorandum in opposition to the

---

[3] The facts of this case are distinguishable from cases where courts found actions giving rise to abusive conduct occurred "under the color of law." For example, in *Rogers v. City of Little Rock*, 152 F.3d 790 (8th Cir. 1998), the Eighth Circuit held that a police officer acted under color of state law after he stopped a woman for a traffic violation, followed the woman home in his patrol car so she could find her insurance papers, followed her inside, and then coerced her into having sex. *Rogers*, 152 F.3d at 793-94, 798. In so holding, the Eighth Circuit explained that the facts showed that the police officer relied on his authority as a police officer to facilitate the assault. *Id.* at 798. In *Rogers*, unlike here, the police officer was carrying out his duties in making the traffic stop and remained in uniform, with his badge and gun, during the assault. *Id.* In addition, the victim testified that she felt she had to cooperate because he was a police officer. *Id.*

9

motions for summary judgment contain allegations that appear to support Plaintiffs' grooming argument. For example, Plaintiffs allege that Meemken treated Plaintiffs favorably in the Explorer Post program, via promotions and by allowing N.M. to drive his patrol car in unpermitted circumstances. (Doc. No. 70 at 9-13.) Plaintiffs argue that it was highly foreseeable that these "grooming" activities would facilitate sexual abuse.

Even accepting Plaintiffs' version of the facts—that certain "grooming" occurred during the Explorer Post program—the evidence fails to demonstrate that Meemken was acting under color of law. The facts of this case are similar to those in *Humke*. In *Humke*, the mother and guardian of Jane Doe sued a police officer (Humke) and the police chief under § 1983 for Humke's sexual assault of Doe. *Humke*, 128 F.3d at 1214. As part of Humke's law enforcement duties, he provided security for the local school, where he met Doe. *Id*. at 1214. Humke acknowledged that he was a "good will ambassador," with children and for the department, and that it was important for children to learn to trust the police. *Id*. at 1215. Humke was regularly assigned to Doe's school. *Id*. at 1214. Humke would see and talk to Doe three or four times per week, and occasionally gave her rides home. *Id*. Humke also bought Doe candy and sodas, gave her a pen set for Christmas, and while in his patrol car he would sometimes drive to Doe's house and talk to her from the window. *Id*. While on-duty at Doe's school, Humke suggested several times to Doe and her friends that they go to his farm to ride all-terrain vehicles. *Id*. Doe eventually agreed and Humke picked up Doe and a friend at Doe's home. *Id*. Humke was off-duty, driving his personal vehicle, and was not wearing

his uniform or badge. *Id*. at 1214-15. When Humke picked up Doe, he met with Doe's mother and step-father and assured them that Doe would be safe. *Id*. While riding on the all-terrain vehicle, Humke sexually assaulted Doe. *Id*. In *Humke*, the plaintiffs argued that "Humke was acting under color of law because he abused his position and authority as an officer of the law to create circumstances under which he could sexually assault Doe." *Id*. at 1216. The Eighth Circuit, however, affirmed the district court's grant of summary judgment in favor of the defendants, holding that "Humke was not acting under color of law because there was no nexus between his position as a police officer and his abuse of Doe on the day in question." *Id*. at 1218.[4]

Here, there is no nexus between Meemken's position as an advisor for the Explorers' Post program or as a police officer and his abuse of Plaintiffs. The record clearly reflects that Meemken's relationship with R.B. and J.B. was familial—Meemken is both R.B.'s and J.B.'s uncle, and N.M. came to know Meemken via R.B. (with whom N.M. had a romantic relationship). (Doc. No. 70 at 16.) Thus, Meemken knew and socialized with Plaintiffs outside of the Explorer Post program. While there are

---

[4] Similarly, in *Becerra v. Asher*, 105 F.3d 1042 (5th Cir. 1997), *cert. denied*, 522 U.S. 824 (1997), the Fifth Circuit Court of Appeals held that that sexual assault of a student by a teacher did not occur "under color of state law" where, despite evidence that the teacher first befriended and showed a special interest in the victim at school, the assaults occurred at student's home several months after the student withdrew from school, and where the contacts with student were not school-sponsored or part of the teacher's duties. *Becerra*, 105 F.3d at 1047. Also in *Becerra*, the court rejected the argument that the sexual abuse would not have occurred had the teacher not won the student's trust and affection while serving as teacher, stating that the constitutional violation "did not extend to the development of trust and affection." *See id.*, 105 F.3d at 1047.

allegations that Meemken treated Plaintiffs preferentially in the Explorers Post program, that treatment is not enough to create a nexus with the instances of abuse. This is not a case where Meemken used his position at the Explorer Post or as a police officer to create the opportunity for sexual contact. *Cf. Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479-80 (9th Cir. 1991) (holding that sufficient evidence supported jury's conclusion that state employee at the Washington State Employment Security office acted under color of state law when he raped refugees during a meeting intended to help the refugees obtain work). In fact, all instances of abuse occurred at family outings or at Meemken's or other family members' homes. Moreover, there is no evidence that Meemken was acting under the pretense of his authority during the incidents of abuse. Viewing the facts in the light most favorable to Plaintiffs, no reasonable juror could conclude that Meemken was actually acting in his official capacity or exercising his responsibilities pursuant to state law when the abuse occurred. Thus, no reasonable juror could conclude that Meemken was acting under color of law. Accordingly, Meemken's status as a police officer or Explorer Post advisor does not convert his off-duty abuses into actionable violations and Plaintiffs cannot maintain a § 1983 claim against Stearns County.

**III.     Section 1983 Claims against BSA and the Council**

As an initial matter, the Court notes that none of the claims asserted in either Plaintiffs' Complaint or Amended Complaint are specifically asserted against BSA or the Council. This alone could justify the Court's dismissal of the claims against these defendants. Even so, Plaintiffs suggest that a valid claim exists against BSA and the

Council because they were in a "symbiotic relationship" with Stearns County. However, as explained above, Plaintiffs' claim against Stearns County fails for lack of evidence that Meemken was acting under color of state law. Accordingly, any claim against BSA and the Council, even if properly asserted, fails for lack of evidence of state action.[5] *See Humke*, 128 F.3d at 1218.

Despite the Court's decision above, the Court underscores, as other courts have, that it does not condone the alleged abusive behavior of Meemken. As egregious as Meemken's alleged acts were, liability under § 1983 is limited to constitutional violations occurring under color of state law. The alleged incidents of sexual abuse of the Plaintiffs, while "reprehensible and to be condemned in the strongest possible terms, was a private tort committed by a person acting in a purely private capacity." *Humke*, 128 F.3d at 1218.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Stearns County's Motion for Summary Judgment (Doc. No. [59]) is **GRANTED**.

2. BSA and the Council's Motion for Summary Judgment (Doc. No. [61]) is **GRANTED**.

---

[5] Because the Court concludes that any claim against BSA and the Council fails, it need not reach additional arguments made by BSA and the Council in support of their motion for summary judgment, such as the argument that they bear no § 1983 liability because they are private actors.

        3.       Defendants are entitled to judgment on all claims asserted against them in Plaintiffs' Amended Complaint (Doc. No. [52, Ex. 1].)

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated:  February 27, 2015        s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge